```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                   FORT WORTH DIVISION

BEVERLY HORTMAN,                §
                                §
           Petitioner,          §
                                §
V.                              §   Civil Action No. 4:15-CV-820-Y
                                §
JODY R. UPTON, Warden,          §
FMC-Carswell,                   §
                                §
           Respondent.          §
```

## **OPINION AND ORDER**

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Beverly Hortman, a federal prisoner confined in FMC-Carswell, against Jody R. Upton, warden of FMC-Carswell, Respondent.

After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

### I.  Factual and Procedural History

By this action, Petitioner challenges her termination from the residential drug-abuse treatment program (RDAP), which she asserts has caused her "to have a longer sentence than warranted." (Pet. 5, ECF No. 1.) She seeks release for time served and compensatory damages. (*Id.* at 7.) To establish the factual background of the case, the government has provided the declaration of Dr. Leslie Wheat, the drug abuse program coordinator at FMC-Carswell, providing:

. . .

2. My responsibilities as the Drug Abuse Program Coordinator include overall management of the FMC Carswell Drug Abuse Treatment Program. I evaluate inmates for participation in the Residential Drug Abuse Treatment Program (RDAP), Non-Residential Drug Abuse Treatment Program and the Drug Abuse Education course and I oversee the administration of the English-speaking drug treatment programs at FMC Carswell.

3. In this position, I have access to official records compiled and maintained by the Federal Bureau of Prisons (BOP), inmate files, and the Bureau of Prisons Electronic Medical Records. I am familiar with the BOP Program Statement 5330.11, *Psychology Treatment Programs*, which governs the drug treatment programs within the Bureau of Prisons.

4. It is my understanding that the Petitioner, Beverly Hortman, Federal Register Number 05650-089, alleges she was expelled from the RDAP because of medical conditions that she claims could not be accommodated on the RDAP unit. I understand that Ms. Hortman requests to be reinstated into the RDAP and be granted early release.

5. The RDAP is intended for inmates with a diagnosable and verifiable substance use disorder, who volunteer for treatment, and are able to participate in the entire RDAP. To successfully complete the RDAP, inmates must complete three components: the unit based component, follow-up services, and the transitional drug treatment (TDAT) component. The unit-based component is conducted in a treatment unit that is set apart from the general prison population and consists of a minimum of 500 hours of treatment. If time allows following the completion of the unit-based program, prior to the TDAT component, inmates must participate in follow-up services. The TDAT component requires inmates to be transferred to community confinement and successfully complete community-based drug abuse treatment in a community-based program.

6. In order to be admitted into the RDAP, inmates must

       (1) have a verifiable substance use disorder; (2) sign an agreement acknowledging program responsibility; and (3) when beginning the program, be able to complete all three components of the program.

7. Although the unit-based component of the program requires that inmates live in the RDAP unit, separated from the general population inmates, there is an exception in policy for those inmates with physical disabilities or medical conditions. Inmates with physical disabilities or medical conditions that require reassignment to a unit other than the RDAP unit to ensure handicap accessibility or mental monitoring may be qualified for the RDAP if the inmate is otherwise eligible for the RDAP, is able to fully participate in all aspects of the RDAP, and is able to be held accountable to the same standard of treatment and conduct as all other RDAP participants.

8. During the RDAP unit-based component, inmates participate in a minimum of 500 contact hours, meaning face-to-face contact between treatment staff and inmate participants, over no less than nine months of half-day programming.

9. In order to successfully complete the RDAP, an inmate must have satisfactory attendance and participation in all RDAP activities and pass each RDAP testing procedure.

10. Inmates may be expelled from the RDAP by the Drug Abuse Program Coordinator because of disruptive behavior related to the program or unsatisfactory progress in treatment. Ordinarily, inmates are given one formal warning prior to expulsion. Inmates are ordinarily provided at least one treatment intervention prior to removal. In response to unsatisfactory progress or disruptive behavior staff meet with the inmate so to discuss the behavior or lack of progress, assign the treatment intervention to reduce or eliminate the behavior or improve progress, warn the inmate of consequences of failure to alter her behavior, document the meeting and changes to the treatment plan, and if appropriate, require the inmate to discuss the behavior in the community. When

multiple treatment interventions are required in response to inappropriate behavior or unsatisfactory progress, the treatment team meets to discuss the possibility of removing the inmate from the program.

11. After being reviewed and determined to be eligible for the RDAP, Ms. Hortman was enrolled in the RDAP on December 31, 2014. She signed an agreement to participate in RDAP on December 29, 2014, wherein she acknowledged her responsibilities and the consequences of failing to meet those responsibilities. In February of 2015, the RDAP unit moved out of the hospital into one of the housing units located on the compound of FMC Carswell.

12. On February 5, 2015, staff documented that Ms. Hortman was aggressive and began yelling at her peers during a group meeting. She refused to make eye contact with her peers, tried to talk over her peers, and tried to engage with staff when peers were presenting her with feedback.

13. On February 10, 2015, staff documented that Ms. Hortman did not have her assignments completed for group and became rude and verbally aggressive toward her peers when they presented her with feedback. On February 12, 2015, Ms. Hortman received a formal warning for not completing her assignments. On February 18, 2015, Ms. Hortman met with her treatment team who provided feedback that she continued to struggle with lack of open-mindedness, entitlement, and disrespecting peers and staff. Ms. Hortman stated that she disagreed with the treatment team. On February 19, 2015, staff documented that Ms. Hortman still did not have her assignment completed.

14. On March 6, 2015, after the RDAP unit moved out of the hospital, Ms. Hortman was moved back to the hospital because she needed to sleep in a hospital bed and the bed would not fit in a cell on the new RDAP unit. Ms. Hortman was allowed to continue in the program and was instructed that she should participate in all daily activities and be on the RDAP unit as much as possible outside of programming hours.

4

15. On March 20, 2015, staff documented that Ms. Hortman continued to have difficulty following institutional rules and was continuing to display negative behaviors including entitlement and disrespect toward staff. On March 23, 2015, staff observed Ms. Hortman being belligerent in the institution's pill line. Staff noted that she was not progressing in her programming. On April 2, 2015, staff again documented that Ms. Hortman was having difficulty with negative behaviors toward her peers and staff. After being confronted about her behavior, she stated that she did not have to follow the rules. She also talked over staff members, displayed bad body language, and was passive aggressive.

16. On April 6, 2015, Ms. Hortman was expelled from the RDAP due to significant lack of clinical progress. Ms. Hortman received weekly help-ups for the same treatment issues and displayed behaviors that were not consistent with the RDAP including entitlement; disrespect; lack of caring, willingness, and open-mindedness; and overall criminal behavior. After being repeatedly warned about her behavior, she continued to engage in these behaviors with no observable changes. Because Ms. Hortman was expelled from the RDAP, she is ineligible for early release under 18 U.S.C. § 3621(e).

(Resp't's App.2-6, ECF No. 16 (footnote omitted).)

Petitioner appealed her expulsion through the prison's administrative remedy, at least in part, to no avail. (Pet'r's Mem. 14, 17.)

## II.  Discussion

To be entitled to habeas relief, a petitioner must allege and prove that he is in custody in violation of the Constitution or laws or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3). A prisoner has no statutory or constitutionally-protected right to

participate in the RDAP or to receive a sentence reduction for completing such a program. Rather, the BOP has discretionary authority to decide who participates in the program and, of those participants, who is eligible for a sentence reduction pursuant to 18 U.S.C. § 3621(e). *See Lopez v. Davis,* 531 U.S. 230, 241 (2001) (providing upon completion of RDAP, BOP "has the authority, but not the duty," to reduce term of imprisonment); *Sandlin v. Conner,* 515 U.S. 472, 484 (1995) (providing a prisoner has no constitutional right in being released before the completion of a valid sentence); *Moody v. Daggett,* 429 U.S. 78, 88 n.9 (1976) (providing a prisoner has no constitutional right to participate in any prison rehabilitation programs); *Bulger v. U.S. Bureau of Prisons,* 65 F.3d 48, 49 (5th Cir. 1995) (citing *Moody,* 429 U.S. at 88 n.9)). Petitioner's expulsion from the RDAP was justified and was not in violation of her statutory or constitutional rights. Further, contrary to her assertion, the BOP accommodated her disabilities by allowing her to continue sleeping in the hospital at nights when the RDAP was moved to another facility.

To the extent Petitioner seeks compensatory damages, money damages are not available as a remedy under § 2241. Thus, Petitioner's request for money damages is disregarded as mere surplusage.

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241

6

and DENIES a certificate of appealability.

SIGNED August 18, 2016.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE